## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER V. LANGONE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 5638 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| JIM MILLER, SUSAN MILLER, TASSOS | ) | |
| NASSOS, and MARY ANN NASSOS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Attorney Christopher V. Langone ("Plaintiff") brings this action stemming from a fee dispute against his former clients Jim Miller, Susan Miller, Tassos Nassos, and Mary Ann Nassos (collectively "Defendants"). (R. 10, Compl.) Presently before the Court is Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (R. 18, Defs.' Mot. for J. ("Defs.' Mot.").) For the following reasons, the motion is granted.

## RELEVANT FACTS & PROCEDURAL HISTORY

According to the Complaint, Defendants hired Plaintiff, along with two other law firms, to represent them in a class action lawsuit against the Royal Macabees Life Insurance Company ("Royal Macabees") in the Circuit Court of Cook County. (R. 10, Compl. ¶¶ 10-14.) The case concerned an increase in insurance premiums that allegedly violated the terms of a contract between Defendants and the Royal Macabees. (R. 17, Ans., Ex. 1 at 1.) In connection with that case, Plaintiff alleges that he prepared and filed a complaint, conducted research, and otherwise provided "valuable legal services" to Defendants. (R. 10, Compl. ¶ 11.) He attaches his billing

1

records to the Complaint, which indicate that he and other attorneys at his firm incurred $355,351.71 in fees while working on the case between December 1996 and November 2007. (R.1, Compl., Ex. A.) Plaintiff claims that he was never paid for any of his work, and in October 2008, he filed this action seeking to recover his fees from Defendants under a quantum meruit theory.[1] (R. 10, Compl. ¶¶ 17-19.)

Defendants have answered the Complaint and assert that a contract existing between the parties precludes Plaintiff's recovery of fees under a quantum meruit theory. (R. 17, Ans. ¶ 19.) Defendants attach to their Answer a contingency fee agreement signed by Plaintiff, which indicates that Plaintiff (as well as the other law firms in the case) would receive a total of 33% percent of Defendants' recovery if they prevailed in the lawsuit and would recover nothing if Defendants did not prevail. (R. 17, Ans., Ex. 1.) The agreement further provides: "If a court determines that CLIENT's case should proceed as a class action, then the LAW FIRMS' fees will be set by the court hearing the case." (Id. ¶ 4.) The agreement also provides that the law firms representing Defendants would "share in the total fees paid on a pro rata basis according to the amount of time each has expended or as awarded by the court hearing the case." (Id. ¶ 6.)

According to Defendants, a class was certified in the Royal Macabees case, and the case thereafter settled on a class basis. (R. 17, Ans., Affirm. Defenses ¶ 4.) They attach to their Answer an April 4, 2008, final order approving the class settlement in Royal Macabees, in which the court retained "continuing and exclusive jurisdiction" over all matters pertaining to the administration of the settlement "and for the purpose of awarding attorneys' fees to Class

---

[1] Subject matter jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. Plaintiff is a citizen of New York and Defendants are citizens of Illinois and Indiana, and the amount in controversy exceeds $75,000. (R. 10, Compl. ¶¶ 1-5.)

Counsel . . . and reimbursement of Class Counsels' expenses." (R. 18-2, Ans., Ex. 2 at 3-4.)

Defendants move for judgment on the pleadings, asserting that under the fee agreement, Plaintiff was required to petition the state court to receive payment from the Royal Macabees settlement fund, and that the existence of the fee agreement precludes his recovery under a quasi-contract theory. (R. 17, Ans. ¶¶ 5, 6; R. 18, Defs.' Mot.)

## LEGAL STANDARDS

Under Rule 12(c), "a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). A motion for judgment on the pleadings should be granted "only when it appears beyond a doubt that the plaintiff cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id.* In deciding the motion, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

## ANALYSIS

Before turning to the merits, this Court must determine what documents it can consider in ruling on the motion. Defendants attach four documents to their Answer: the fee agreement; the April 4, 2008, order granting final approval of the settlement in the Royal Macabees litigation; a July 15, 2008, transcript of proceedings before the Royal Macabees court; and a complaint filed by Plaintiff in the Circuit Court of Cook County on October 31, 2008, against his co-counsel in the Royal Macabees litigation for breach of the fee agreement. (R. 17, Ans., Exs. 1-4.)

Plaintiff contends that none of these documents can be considered by the Court because

3

they go "far beyond the pleadings." (R. 21, Pl.'s Resp. to Defs.' Mot. at 1.) In fact, these documents are *part* of the pleadings, since they are attached to Defendants' answer. (*See* R. 17, Defs.' Ans., Exs. 1-4.) The Seventh Circuit has held that, for purposes of Rule 12(c), the pleadings consist of the "the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun Show v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "Written instrument" is construed broadly to include such things as affidavits, letters, contracts, and loan documents. *Northern Indiana Gun Show*, 163 F.3d at 453. The Court is also allowed to take judicial notice of matters in the public record, such as filings in other courts. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 500 F. Supp. 2d 864, 867 (N.D. Ill. 2007).

Here, three of the four documents---the Royal Macabees order, the transcript of proceedings, and Plaintiff's complaint filed against co-counsel---are matters of public record, of which the Court takes judicial notice. The fee agreement is both attached to and referenced in Defendants' Answer. (R. 17, Ans. at 5-8, Ex. 1.) Thus, in accordance with Seventh Circuit case law, this Court will consider the Complaint, the Answer, and the documents attached to these pleadings in ruling on Defendants' motion.

Turning to the merits, Defendants argue that the existence of the fee agreement prevents Plaintiff from recovering under a quantum meruit theory. (R. 18, Defs.' Mot. at 2-3.) Quantum meruit is a quasi-contract doctrine that allows the Court to imply the existence of a contract in order to prevent injustice. *Hayes Mech., Inc. v. First Indus.*, 812 N.E.2d 419, 426 (Ill. App. Ct.

4

2004). To recover under a quantum meruit theory, the plaintiff must plead and prove the following: (1) he performed a service to the benefit of the defendant; (2) he did not perform this service gratuitously; (3) the defendant accepted this service; and (4) no contract existed to prescribe payment for this service. *Installco, Inc. v. Whiting Corp.*, 784 N.E.2d 312, 318 (Ill. App. Ct. 2002); *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 908 (Ill. App. Ct. 1998). Under Illinois law, a party cannot recover on a quantum meruit theory when an actual contract governs the parties' relations. *Keck Garrett & Assoc., Inc. v. Nextel Comms., Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *see also Installco*, 784 N.E.2d at 318 ("Where services are rendered under an express contract, there can be no quasi-contractual recovery.").

Here, Defendants argue that because there was a fee agreement in place governing how Plaintiff was to obtain his fees, he cannot seek recovery under a quasi-contract theory. (R. 18, Defs.' Mot. at 2-3.) In his response, Plaintiff requests that the motion be denied or, alternatively, converted into a motion for summary judgment so that he can have an opportunity to conduct discovery. (R. 21, Pl.'s Resp. to Defs.' Mot. For J. ("Pl.'s Resp.") at 4-6.) In Plaintiff's view, there are genuine issues of material fact precluding entry of judgment, specifically, whether Plaintiff was terminated by Defendants such that the fee agreement is inapplicable. (*Id.* at 4-5.)

Under Illinois law, when the attorney-client relationship terminates, the contingent-fee contract ceases to exist, and the contingency terms are no longer operative. *In re Estate of Callahan*, 578 N.E.2d 985, 990 (Ill. 1991); *In re Estate of Horwitz*, 863 N.E.2d 842, 846 (Ill. App. Ct. 2007). An attorney who enters into a contingent-fee agreement with a client and is discharged by the client without cause "is entitled to be paid on a quantum meruit basis a reasonable fee for services rendered before discharge." *Id.*

5

Notably, Plaintiff does not make any assertion in his Complaint that he was terminated as counsel in the Royal Macabees case. Indeed, the Complaint is wholly silent on the issue of the fee agreement, or the absence of any agreement between the parties, despite the fact that an element of a quantum meruit claim is the lack of a contractual agreement prescribing payment for the services at issue.[2] *See Installco*, 784 N.E.2d at 318; *Owen Wagener & Co.*, 697 N.E.2d at 1053. In his response brief, Plaintiff suggests that he was terminated without expressly stating as much; he makes reference to a June 7, 2005, letter attached to his response in which two of the Defendants (the Millers) wrote to Plaintiff's co-counsel in the Royal Macabees case indicating a desire to terminate Plaintiff and his law firm. (R. 21, Pl.'s Resp. at 4; *id.*, Ex. 1.) This letter is not part of the pleadings, however, and cannot be considered by the Court in ruling on Defendants' motion. *See Northern Indiana Gun Show*, 163 F.3d at 452. Even if the letter could be considered, it does not indicate that Plaintiff was fired, nor was it even addressed to him. The letter merely indicates that some of the named plaintiffs expressed an interest in terminating Plaintiff at a one point in the Royal Macabees proceedings. (*See* R. 21, Pl.'s Resp., Ex. 1.)

Plaintiff also points out that his billing records contain a notation on June 13, 2005, referencing "discussion of case and our firing." (R. 10, Compl., Ex. A. at 20.) The billing records are part of the pleadings and can be considered, but they do not support Plaintiff's argument. Instead, the billing records reflect that Plaintiff continued to work on the Royal Macabees case long after the June 13, 2005, letter was written. (*See* R. 10, Compl., Ex. A.) The

---

[2] To the extent Plaintiff is arguing that the existence of the contract is an affirmative defense that cannot be raised at this stage, this is incorrect. (*See* R. 21, Pl.'s Resp. at 5.) Under Illinois law, the plaintiff in a quantum meruit case must plead and prove that no contract existed prescribing payment for the services at issue. *See Installco*, 784 N.E.2d at 318; *Owen Wagener & Co.*, 697 N.E.2d at 1053.

6

fact that Plaintiff is seeking compensation for work done on the Royal Macabees case as late as November 2007 certainly negates his suggestion that he was terminated in June 2005.

Plaintiff also argues that there is a dispute over whether he filed a fee petition in the Royal Macabees case, and the reasons he acted as he did in that case, thus precluding entry of judgment. (R. 21, Pl.'s Resp. at 4-5.) The Court agrees with Defendants that any such dispute is not material, since the critical issue here is the *existence* of the contract governing how Plaintiff was to be paid, not Plaintiff's compliance with that contract. *See Keck Garrett & Assoc., Inc.*, 517 F.3d at 487.

The Court notes that Plaintiff has filed an action against his co-counsel in the Royal Macabees case for breach of this very same fee agreement. (*See* R. 17-2, Ans., Ex. 4.) Plaintiff's verified complaint in that case alleges that his co-counsel, the law firm of Schad, Diamond & Shedden ("SDS"), went on a "billing spree" over-billing the case, and that he declined to join in the fee petition filed by that firm because "he felt it would have been improper, unethical and a breach of his fiduciary duty to the Class." (*Id.* ¶¶ 13-14.) His view, which he raised with the Royal Macabees court, was that a reasonable fee would not exceed 10% of the value of the $93 million "mega-fund" created by the settlement. (*Id.* ¶ 15.) Pursuant to the fee agreement, Plaintiff is seeking his share of the $25 million attorneys' fee award made by the Royal Macabees court, over which SDS is allegedly exercising control. (*Id.* ¶¶ 23-25.)

It is clear from the pleadings that this is, at bottom, a dispute between co-counsel over fees awarded in the Royal Macabees litigation. That is an issue that must be resolved in an appeal of the Royal Macabees court's fee award (to the extent one is available) or in the context of Plaintiff's separate lawsuit filed against his co-counsel. Plaintiff's attempt to plead around the

existence of the fee agreement in order to obtain fees from his clients under a quantum meruit theory cannot succeed. For these reasons, Defendants' motion for judgment on the pleadings is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (R. 18) is granted. Judgment is entered in favor of Defendants.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

Dated: **July 6, 2009**